UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CYNTHIA COATES, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:24-cv-01869-MPB-MG |
| WARDEN, INDIANA WOMEN'S PRISON, et al., | ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Cynthia Coates, an inmate housed at Indiana Women's Prison ("IWP"), filed this action alleging that Defendants violated her constitutional rights when she was repeatedly sexually harassed and assaulted by Officer Dennis Buckingham at IWP.

Warden LaShelle Brown ("Warden Brown") moves for summary judgment arguing that Ms. Coates failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. Dkt. 19. For the reasons explained below, Warden Brown's motion for summary judgment, dkt. [19], is **denied**.

### I. Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, which is a way to resolve a case short of a trial. See Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that might be relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Indeed, "[t]he court has no duty to search or consider any part of the record not specifically cited" in accordance with the local rules. S.D. Ind. L.R. 56 1(h); *see* S.D. Ind. L.R. 56 1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. . . . The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.").

## II.   Factual Background

### A.   The Typical Grievance Process

At all times relevant to the claims in this suit, Ms. Brown was an Indiana Department of Corrections ("IDOC") inmate who was incarcerated at IWP. Dkt. 1; dkt. 22-1 at 1.

The IDOC has a standardized offender grievance process which was in place during the time Ms. Coates alleges her rights were violated. *See* dkt. 19-2. IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the Indiana Department of Correction policy governing the grievance procedure and details how a prisoner must exhaust their administrative remedies using that procedure. *Id.* at 1, 3. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 1, 3, 9-13. Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. *Id*.

### B. The PREA Grievance Process

IDOC's grievance policy also contains a subsection for emergencies specifically involving incidents of sexual abuse. Dkt. 19-2 at 5-6. Sexual abuse, as defined in Policy and Administrative Procedure 02-01-115, "Sexual Abuse Prevention," consists of non-consensual sex acts, abusive sexual contact, and staff sexual misconduct. *Id.* at 6. The subsection "presents guidelines for the filing of grievances alleging that an offender is subject to a substantial risk of imminent sexual abuse and remov[es] the standard time limits on submission for a grievance regarding an allegation of sexual abuse." *Id.* The PREA grievance policy states that "[t]he Department shall not require an offender to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse." *Id.*

The steps of the PREA grievance process are as follows:

(1) When receiving an emergency grievance alleging an offender is a victim of an incident of sexual abuse, the receiving staff member shall immediately forward the grievance,

3

or any portion of the grievance that alleges the substantial risk of imminent sexual abuse, to the Warden. *Id.* at 5.

(2) The Warden shall take immediate corrective action. The Warden shall forward the emergency grievance to the Offender Grievance Specialist, who shall provide an initial response within forty-eight (48) hours of the offender filing the emergency grievance. *Id.*

(3) The Warden shall also forward the emergency grievance to the Department's Offender Grievance Manager, who shall issue a final Department decision within five (5) calendar days to the offender who filed the grievance. *Id.*

The initial response and final Department decision shall document the Department's determination whether the offender is in substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance. *Id.*

### C. Ms. Coates' Attempts at Exhaustion

Ms. Coates was guided by counselors and other prison officials regarding how to report incidents of staff sexual misconduct. Dkt. 22 at 1-2. Pursuant to that guidance from IWP staff, Ms. Coates submitted a detailed letter to Internal Affairs at IWP disclosing, in detail, the sexual abuse she suffered at the hands of Dennis Buckingham over a span of several months from November 2022 through March 2023. *Id.*

IDOC has no record showing that Ms. Coates submitted a timely and adequate state grievance form regarding her sexual abuse claims via the typical grievance process. Dkt. 19-1 at 9. Likewise, IDOC has no record of any attempts to submit any first- or second-level grievance appeals regarding her sexual abuse claims. *Id.*

### III. Discussion

The PLRA, requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Defendant faces the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted).

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). As a result, "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when "prison administrators thwart inmates from taking advantage of a grievance process

5

through machination, misrepresentation, or intimidation." *Id.* at 633. If grievance policy language is ambiguous, or if grievance provisions are vague or confusing, any ambiguity is resolved in favor of the prisoner, because the burden of proof rests with the defendants to show an administrative process was available. *Miles v. Anton*, 42 F.4th 777, 781−82 (7th Cir. 2022). Similarly, the administrative process can be unavailable if a prison's response to a grievance "so obscure[s] the administrative process" that it becomes "unknowable." *Reid v. Balota*, 963 F.3d 325, 331 (7th Cir. 2020).

### A. Applicability of the Grievance Policy

As it relates to the applicability of the Grievance Policy to Ms. Coates' claims, both Warden Brown and Ms. Coates' arguments hold no weight in their own respects.

Warden Brown argues that Ms. Coates "did not exhaust the offender grievance process . . . because none of the grievances which Plaintiff has submitted and which were subsequently accepted and recorded during her incarceration at IWP concern the claims . . ." regarding repeated sexual harassment and assault by Dennis Buckingham . . ." Dkt. 20 at 11 (citing dkt. 19-1 at 6, 9; dkt. 19-2).

Warden Brown further argues that "IDOC does not possess any record showing that [Ms. Coates] submitted a timely and adequate grievance form regarding her claims . . . , or that she thereafter attempted to submit any first- or second-level grievance appeals regarding said claims. *Id.* (citing dkt. 19-1 at 9).

Warden Brown's argument rests solely on the typical grievance policy, which is not applicable to claims of sexual abuse. *Compare* dkt 19-1 at 3-4 *with* dkt. 19-1 at 5-6.

Stated differently, Warden Brown moved for summary judgment based on a section of the grievance policy that is inapplicable to the claims at issue in this lawsuit. Ms. Coates' lawsuit stems

6

from allegations of repeated sexual harassment and sexual assault from her caseworker Dennis Buckingham. Dkts 1, 10. Her allegations clearly fall into the PREA grievance subsection as she alleges sexual abuse. Dkt. 19-2 at 5-6 ("Sexual abuse, as defined in Policy and Administrative Procedure 02-01-115, 'Sexual Abuse Prevention,' consists of non-consensual sex acts, abusive sexual contact, and staff sexual misconduct.").

Ms. Coates argues that her "claims are not appropriate for the Offender Grievance Process under the plain language of the policy." Dkt. 21 at 3. She is incorrect that the matter is not covered by the grievance policy. As the Court indicated above, IDOC's grievance policy has a clear carve out for emergencies such as sexual assault—the PREA grievance process. Dkt. 19-2 at 5-6.

By stating that there was no procedure for her to use, she ultimately admits that she did not follow the emergency grievance process.

### B. Availability of the Grievance Policy

Ms. Coates also argues that the grievance process was not made available to her. Dkt. 21 at 3. She indicates that she wrote a letter to internal investigations, but did not file any sort of grievance because she was never told she needed to fill out a separate grievance form. Dkt. 21 at 1 (citing dkt. 22 at 1-2).

Pursuant to the guidance provided by counselors and other prison officials regarding how to report incidents of staff sexual misconduct, Ms. Coates submitted a detailed letter to Internal Affairs at IWP disclosing, in detail, the sexual abuse she suffered at the hands of Dennis Buckingham over a span of several months from November 2022 through March 2023. Dkt. 22 at 1-2. From then on, the PREA grievance process would have required the staff member receiving that letter detailing the sexual abuse to "immediately forward the grievance, or any portion of the grievance that alleges the substantial risk of imminent sexual abuse, to the Warden." Dkt. 19-2 at

5. Then, the PREA grievance process requires that "[t]he Warden shall take immediate corrective action. The Warden shall forward the emergency grievance to the Offender Grievance Specialist, who shall provide an initial response within forty-eight (48) hours of the offender filing the emergency grievance. *Id.*"

Warden Brown repeatedly argues that "IDOC does not otherwise possess any record showing that [Ms. Coates] submitted a timely and adequate grievance form regarding her claims" regarding repeated sexual harassment and assault by Dennis Buckingham. Dkt. 20 at 11 (citing dkt. 19-1 at 6, 9; dkt. 19-2). That argument further indicates that the receiving staff member either neither forwarded the emergency grievance to the Warden, or that the Warden failed to take immediate corrective action, given the grievance department had no record of such correspondence. *See* dkt. 19-1 at 9 ("Coates did not submit a grievance related to her claims against State Defendant prior to filing her complaint in this Case, and has not submitted a grievance related to her claims against State Defendants in this Case during her incarceration at IWP.").

Warden Brown has not met her burden of proof that the grievance process was available to Ms. Coates. She was required to directly confront any evidence about availability, dkt. 17 at 2, but she did not do so. In her reply brief, she argues "facility staff merely guided Plaintiff in submitting a letter to Internal Affairs at IWP regarding her alleged sexual harassment and assault, and the record is devoid of any suggestion that IWP staff mentioned the Grievance Process or suggested to Plaintiff that a letter to Internal Affairs was a substitution for the Grievance Process." Dkt. 25 at 6. Despite Warden Brown's argument to the contrary, *see* dkt. 25 at 6-7, this is a direct admission and acknowledgment that IWP staff thwarted Ms. Coates' availability of the grievance process.

Warden Brown further argues that Ms. Coates "was advised of the Grievance Process during her initial orientation at IWP, and the Grievance Process is available to her upon request at

8

IWP's law library." Dkt. 22 at 7 (citing dkt. 19-1 at 3 but providing no documentation of signed orientation checklist). But this too, fails to confront the issue of *what IWP staff told Ms. Coates to do* to report the sexual abuse she suffered. *Cf. Pavey*, 663 F.3d 899, 906 (7th Cir. 2011) (when "prison officials misle[a]d [a prisoner] into thinking that . . . [s]he has done all [s]he needed to initiate the grievance process," then the administrative remedy is legally unavailable).

Warden Brown has not adequately confronted or contradicted Ms. Coates' sworn testimony that she was informed by IWP counselors and prison staff that counselors and other prison officials informed her that she was to write a letter to Internal Affairs when reporting incidents of staff sexual misconduct. *See* dkts. 19, 20, 25. At the very least, Warden Brown's summary judgment briefing acknowledges questions of fact in the record as to availability such that summary judgment should not have been pursued.

Simply put, Warden Brown made the grievance process unavailable to Ms. Coates when IWP counselors and prison staff told her *not* to utilize the grievance process, dkt. 22-1 at 1-2, and then argued she should have used the grievance process. *See* dkts. 19, 20. The grievance policy specifically cautions correctional staff against such behavior. Dkt. 19-2 at 6 ("The Department shall not require an offender to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse."). In essence, "prison administrators thwart[ed Ms. Coates] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 633.

Warden Brown is the moving party and did not meet her burden as it relates to the affirmative defense of exhaustion of administrative remedies. Accordingly, she is not entitled to summary judgment based on the affirmative defense and her motion must be denied.

9

### IV.     Conclusion and Further Proceedings

For the reasons stated above, Warden Brown's motion for summary judgment, dkt. [19], is **denied**.

Further, under Rule 56(f)(1), the Court gives Warden Brown notice of its intent to grant summary judgment in Plaintiff's favor on the issue of exhaustion. Warden Brown shall have **through February 5, 2026,** to show cause why summary judgment should not be granted.[1] Alternatively, Warden Brown may withdraw her affirmative defense by this date.

**IT IS SO ORDERED.**

Dated:  January 14, 2026

*[signature: Matthew P. Brookman]*

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

---

[1] Warden Brown is reminded that she was warned in the Entry Directing Development of Exhaustion Defense and Issuing Partial Stay, dkt. 17, that "if Plaintiff responds with evidence that the administrative remedy process was unavailable, the movant may and should consider whether selecting one of the other two options outlined above is the appropriate course—that is, conceding that a *Pavey* hearing is necessary or withdrawing their affirmative defense. Alternatively, the reply must directly confront the plaintiff's evidence regarding availability and explain why summary judgment is warranted despite that evidence." Thus, if Warden Brown intends to provide evidence to contradict Plaintiff's affidavit, they must show cause why such evidence should not be considered untimely in light of that Entry.